UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>United States of America</u>

  v.          Criminal No. 18-cr-132-JD
             Opinion No. 2021 DNH 063

<u>Laveneur Jackson</u>


<u>O R D E R</u>

  Defendant Laveneur Jackson moves for reconsideration of the court's order denying his motion to suppress.  The government objects.


<u>Standard of Review</u>

  "A district court may grant a motion for reconsideration 'if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'"  <u>United States v. Cintron</u>, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (quoting <u>United States v. Allen</u>, 573 F.3d 42, 53 (1st Cir. 2009)); <u>cf.</u> LR 7.2(d).  "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'"  <u>Palmer v. Champion Mortg.</u>, 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure</u>

§ 2810.1 (2d ed. 1995)).  "Unless the court has misapprehended
some material fact or point of law, such a motion is normally
not a promising vehicle for revisiting a party's case and
rearguing theories previously advanced and rejected."  Id.

## Discussion

Jackson argues that the court's decision denying his motion
to suppress was based on manifest errors of fact or law.
Specifically, he contends that the court erred in rejecting his
arguments that law enforcement did not have reasonable suspicion
to stop and question him on January 2, 2017, and that he was
subjected to a custodial interrogation without being provided
sufficient warnings about his rights.  The government objects to
reconsideration on the ground that Jackson merely rehashes
arguments that the court already considered and rejected.

### A.    Terry Stop

In his motion to suppress, Jackson argued that law
enforcement lacked reasonable suspicion to stop him pursuant to
Terry v. Ohio, 392 U.S. 1 (1968).  The court found that "[b]ased
on the information they gathered before stopping Jackson, Agent
Cook and Officer Barter had reasonable suspicion that an illegal
straw purchase of firearms was occurring at Riley's Sport Shop
on January 2, 2017, and that Jackson was involved."  Doc. 152 at

12.  The court accordingly concluded that the stop and
questioning of Jackson did not violate the Fourth Amendment.
Id.

     In support of reconsideration, Jackson reiterates arguments
that the court considered and rejected in denying his motion to
suppress.  For example, the court considered and rejected
Jackson's argument that reasonable suspicion was lacking because
not every tip about suspicious activity turns out to be criminal
activity as well as his argument that the conversation between
Keenan and Soule-Jensen was ambiguous as to implicating Jackson.
Reconsideration is not warranted on any of those grounds.  See
Palmer, 465 F.3d at 30.

     Jackson also contends that the court overlooked or
misconstrued certain facts in finding that the government
officers had reasonable suspicion to stop and question him on
January 2, 2017.  In its order denying Jackson's motion to
suppress, the court found that "[t]he employee [who called the
ATF] was also known to both Agent Cook and Officer Barter from
previous reports of suspicious firearm-purchasing activity and
had previously provided reliable information."  Doc. 152 at 14.
Jackson contends that only Officer Barter, and not Agent Cook,
knew the Riley's Sport Shop employee who reported concerns about
a suspected straw purchase on January 2, 2017.

Regardless of whether Agent Cook knew the reporting employee beforehand, there is no dispute that Officer Barter did, which, as the court found, enhanced the reliability of the employee's report. United States v. Barnes, 506 F.3d 58, 62-63 (1st Cir. 2007) (stating that the focus of the court's inquiry is on the collective knowledge possessed by the officers involved in the investigation).  Furthermore, there is no dispute that Agent Cook met with the reporting employee before stopping Jackson, which further enhanced the report's reliability.  Doc. 152 at 14 ("The employee, however, did not call anonymously, and Agent Cook spoke to the employee in person, which enhances the reliability of the information. . . . Furthermore, while the information from the reporting employee was secondhand, Agent Cook further investigated and corroborated the report before stopping Jackson."); see Florida v. J.L., 529 U.S. 266, 270 (2000) (stating that a "tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated" is more trustworthy than an anonymous tip).

Additionally, during the hearing on the motion to suppress, Agent Cook testified that he knew Chris Crosby, who had called the ATF, as well as Lee Adams, who had initially reported what he believed to be suspicious activity to Crosby.  Doc. 166 at 74 ("I had talked to [Chris Crosby] a few times [before January 2,

4

2017]. . . .  Whenever it came time to get surveillance video,
it was always Chris Crosby who knew how to get the video. . . .
I think I probably talked to [Lee Adams] a few times, nothing
that sticks out.").  Accordingly, the court did not misapprehend
the testimony.

Next, Jackson argues that the court failed to acknowledge
that an illegal straw purchase did not, in fact, take place on
January 2, 2017.  He contends that any suspicion that officers
could have had about an illegal purchase therefore dissipated
before the government officers stopped and questioned him.  The
evidence at the suppression hearing established that law
enforcement had reasonable suspicion to suspect that a straw
purchase was occurring on January 2, 2017.  That the officers
interrupted a suspected straw purchase before it could be
completed did not dissipate their reasonable suspicion that
Jackson was involved in criminal activity.  See, e.g., United
States v. Hensley, 469 U.S. 221, 226 (1985) (observing that
Terry stops can be valid when criminal activity is "imminent" or
"ongoing" and holding that Terry stops can also be valid to
investigate "completed" criminal activity); United States v.
Ferreira, 821 F.2d 1, 4 (1st Cir. 1987) (stating that Terry
stops serve government interests in "crime prevention" and
"crime resolution").  For the foregoing reasons, Jackson has not

demonstrated any ground for reconsideration of the court's order denying his motion to suppress based on an invalid Terry stop.

### B.    Custodial Interrogation

Additionally, in his motion to suppress, Jackson argued that he was subjected to a custodial interrogation on January 2, 2017, and that evidence obtained as a result of that interrogation should be suppressed because the officers failed to provide Jackson appropriate warnings under Miranda v. Arizona, 384 U.S. 436 (1966).  After weighing the relevant facts, the court concluded that Jackson was not in custody during the questioning.  In his motion for reconsideration, Jackson argues that the court erred in weighing and assessing the facts.  Because the court has already considered and rejected the same arguments in denying Jackson's motion to suppress, reconsideration is unwarranted.  See Palmer, 465 F.3d at 30.

Jackson also contends that the court misconstrued the hearing testimony by finding that Officer Dupuis's cruiser was not parked in a way that blocked the Audi from leaving the Riley's Sport Shop parking lot.  Specifically, the court found "credible Agent Cook's and Officer Barter's testimony that the cruiser was not parked in a way that blocked the blue Audi from leaving" and that "Officer Dupuis testified that he did not

6

remember where he parked the cruiser, but indicated that he did
not believe that he blocked the Audi."  Doc. 152 at 6 n.5.
Jackson contends that Officer Barter testified that he did not
remember whether the Audi was blocked and that Officer Dupuis
did not have a recollection about where he parked the cruiser.

    The court, however, found that whether the Audi was blocked
was immaterial to its conclusion that Jackson was not subjected
to custodial interrogation because "even under Jackson's version
of events, it was the Audi that was blocked by the cruiser;
Jackson himself was never physically restrained. Furthermore,
Keenan and Soule-Jensen drove Jackson to Riley's Sport Shop and
the Audi was not his car."  Doc. 152 at 18; United States v.
Hughes, 640 F.3d 428, 436 (1st Cir. 2011) (affirming district
court's decision finding that the defendant was not in custody
and noting the significance that "no meaningful physical
restraint was applied to the defendant").  Jackson provides no
argument that suggests this finding should be reconsidered or
was based on a manifest error of fact or law.

    In any event, the court's finding that the Audi was not
blocked by the cruiser is not manifestly incorrect.  Agent Cook
testified that the cruiser was not blocking the Audi.  Doc. 166
at 70, 100-01 ("Q. Did the marked Hooksett vehicle block the
Audi in any way?  A. No, it didn't.").  Officer Barter did not
remember that the cruiser was parked in a way that blocked the

Audi.  On direct examination, Officer Barter testified that,
although he was not sure exactly where the cruiser was parked,
he remembered that the cruiser was parked a couple of parking
spots away from where he, Jackson, and Soule-Jensen were
standing, which was near the front (Soule-Jensen) and back
(Jackson) of the Audi.  See id. at 26-27 ("I remember the
cruiser being a couple parking spots away, but I don't remember
exactly where it was.  I believe it was more towards the road
area, but I can't remember exactly.").  When asked if the
cruiser was blocking the Audi from leaving the parking lot,
Officer Barter responded, "Not that I remember."  Id. at 27.  On
cross-examination, however, Officer Barter indicated that he did
not know whether or not the cruiser blocked the Audi.  Id. at
48-49 ("Q. All right.  And he parked the cruiser so that it
blocked the Audi from leaving, right?  A. I don't remember where
he parked the cruiser.  I don't remember that, but I don't
remember for sure where that cruiser was positioned.  Q. Okay.
So you're not disputing that. You just don't remember if it was
blocking the Audi from leaving or not?  A. Correct.  I do not
remember that.").  Officer Dupuis testified that, while he did
not recall specifically where he parked the cruiser, he did not
believe it would have blocked a vehicle in the parking lot.  Id.
at 114 ("Q. Do you recall if you parked your cruiser in a way
that would have blocked the route of a vehicle in the parking

8

lot?  A. It's not written in my report so I can't – I don't believe I did.").  Considering all of the testimony, Jackson has not demonstrated that the court manifestly erred by finding that the Audi was not blocked in by the cruiser.

For the foregoing reasons, Jackson has not demonstrated any manifest error of law or fact in the court's order denying his motion to suppress.

<u>Conclusion</u>

Jackson's motion for reconsideration (doc. no. 159) of the court's order denying in part his motion to suppress is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge


March 30, 2021

cc:  Simon R. Brown, Esq.
     Anna Z. Krasinski, Esq.
     Seth R. Aframe, Esq.